```
              IN THE UNITED STATES DISTRICT COURT
               FOR THE SOUTHERN DISTRICT OF OHIO
                         EASTERN DIVISION
```

**DAVID E. HINA,** *et al.*,

      Plaintiffs,

  vs.                                    Civil Action 2:05-CV-008
                                              Judge Marbley
                                              Magistrate Judge King

**ANCHOR GLASS CONTAINER CORPORATION,**

      Defendant.


## OPINION AND ORDER

Plaintiffs seek recovery for injuries allegedly sustained by plaintiff David Hina as a result of the defendant employer's intentional tort in failing to guard equipment being used by him. Plaintiff Amy Dunn asserts a loss of consortium claim.  This matter is before the Court on the *Motion of Defendant Anchor Glass Container Corporation to Dismiss, or in the Alternative, Motion in Limine* ("*Motion to Dismiss*"), Doc. No. 16, and *Plaintiffs' Motion to Strike Defendant's Motion to Dismiss or Other Sanctions* ("*Motion to Strike*"), Doc. No. 58.

### I.   BACKGROUND

On November 5, 2003, plaintiff David Hina ("Mr. Hina") was employed by defendant and operating a milling machine known as a Cincinnati Horizontal Milling Machine ("the machine").  *Amended Complaint* ("*Am. Comp.*"), ¶¶ 5-6.  The machine contained blades that cut grooves into bottle molds.  *Transcript of Proceedings before Mark Holko, Hearing Officer* ("*Transcript*"), dated March 16, 2006, Doc. No. 36, pp. 20, 40.  While operating the machine, the cutting blades caught Mr. Hina's left hand, resulting in injury ("the incident").  *Id*. at 71-72; *Am. Comp.* ¶¶ 6-7.  After the incident, defendant pulled

the machine out of service and moved it to a different part of the plant and out of the general work area. *Affidavit of Kevin Niggemeyer* ("*Niggemeyer Aff.*"), ¶¶ 2-3, attached to *Motion to Dismiss*.

On June 22, 2005, an investigator with the Bureau of Workers' Compensation, Katie Archer, conducted an on-site investigation at defendant's facility in Zanesville. *Affidavit of William Garver* ("*Garver Aff.*"), ¶ 3 and *Report of Investigation* ("*Report*"), attached as Exhibit 10[1] to *Plaintiff's Supplemental Memo. Contra Defendant's Motion to Dismiss* ("*Supp. Memo. Contra*"), Doc. No. 56. Ms. Archer viewed the machine while defendant's employee operated it. *Report*, p. 1. Ms. Archer videotaped this operation and photographed the machine. *Id.*; *Garver Aff.*, ¶ 3.

### A. Mr. Hina's application for an award based on violation of specific safety requirements

Following the incident, Mr. Hina filed an application for an award based upon defendant's alleged violation of specific safety requirements ("VSSR"). *State ex rel. Hina v. Indus. Comm'n, et al.*, No. 07AP-23, 2007 Ohio 4596, at ¶ 4 (10th Dist. Ct. App. Sept. 6, 2007), Doc. No. 32-4, attached as Exhibit 5 to *Plaintiffs' Memorandum Contra Defendant's Motion to Dismiss* ("*Memo. Contra*"), Doc. No. 32.[2] Mr. Hina alleged that defendant failed to provide a way "for disengaging the machine from its power supply and [defendant failed] to provide a device to lock the controls of the machine in the off position when the machine was shut down." *Id*. On March 16, 2006, a

---

[1]This affidavit and a CD-Rom, containing Ms. Archer's report of investigation, photographs and videos, were filed manually. *See* Doc. No. 62.

[2]The copy of the opinion from the Tenth Appellate District, Franklin County, attached as Exhibit 5 to the *Memo. Contra* does not contain the full case citation. Therefore, the listed citation above is one that the Court located on an electronic database.

hearing was held before a staff hearing officer from the Industrial Commission of Ohio ("Industrial Commission"). *Id*. at ¶ 5; *Transcript*. The hearing officer concluded that there was no VSSR, finding no violation of Ohio Admin. Code 4121:1-5-11(D)(13); 4121:1-5-05(D)(1), (2).[3] *Hina*, 2007 Ohio 4596, at ¶¶ 5-6.

Mr. Hina subsequently filed an action in mandamus in the Tenth Appellate District, Franklin County, requesting a writ to compel the Industrial Commission to vacate its order finding no VSSR. *Id*. at ¶ 1. On September 6, 2007, the Tenth District determined that defendant violated Ohio Admin. Code 4121:1-5-05(D)(1) because "the milling machine had no means within easy access of the operator for disengaging the machine from its power supply." *Id*. at ¶ 10. The Tenth District therefore granted in part the requested writ of mandamus, vacating the finding that no VSSR had occurred, directing that the Industrial Commission enter an order that a VSSR existed and assessing an appropriate award for the VSSR, "following a determination of whether or not the VSSR was a direct and proximate cause of Mr. Hine's [sic] injuries." *Id*. at ¶¶ 9-12. On April 14, 2008, the Supreme Court of Ohio referred the matter to mediation. *State ex rel. Hina v. Indus. Comm'n, et al.*, No. 2007-1984, 117 Ohio St. 3d 1464 (2008).

B. **The instant lawsuit and plaintiffs' inspection of the machine**

On January 4, 2005, plaintiffs filed a complaint, Doc. No. 1,

---

[3]This Court could not find the appropriate language under the Ohio Administrative Code provisions cited by the Tenth District and questions whether that hearing officer intended to cite to Ohio Admin. Code 4123:1-5-05(D)(1) (requiring means to disengage power supply to be within easy reach of operator), 4123:1-5-05(2) (requiring a device to lock controls in the "off" position) and 4123:1-5-11(D)(13) (requiring that power driven knives or cutting blades be guarded). Regardless, the hearing officer found no VSSR.

which was later amended, alleging that defendant had "committed an employment intentional tort upon the Plaintiff[,]" causing permanent injury and damages to Mr. Hina.  *Am. Comp.* ¶¶ 6-7.

In connection with these allegations, the parties arranged for Mr. Hina, plaintiffs' counsel, John Fitch, and plaintiffs' expert, Gerald Rennell,[4] to inspect the machine on July 20, 2005 ("the inspection").  *See Affidavit of Mary Barley-McBride* ("*First Barley-McBride Aff.*"), ¶ 2, attached to *Motion to Dismiss*; *Affidavit of John K. Fitch* ("*First Fitch Aff.*"), ¶ 4, attached as Exhibit 1 to *Memo. Contra*.  Mr. Hina, Mr. Fitch and Mr. Rennell signed a confidentiality and non-disclosure agreement prior to the inspection ("the Agreement").  *See* Exhibits B, C and D, attached to *First Barley-McBride Aff*.  The Agreement provided:

> 5. Subject to Paragraph 6 of this Agreement, Disclosee shall not: (i) take any motion or video pictures or photographs while in the Facility; (ii) take any video, motion picture, camera, audio recording equipment or any similar equipment into the Facility [Anchor Glass Container Corporation facility located in Zanesville, Ohio]; (iii) utilize any voice recorder to prepare notes of what is seen in the Facility or what anyone says at the Facility; (iv) prepare any written description, including any drawings, of any machinery, equipment or device being utilized at the Facility even after leaving the Facility; (v) prepare any written description of any process being utilized at the Facility even after leaving the Facility; or make any handwritten notes, (vii) *manipulate, operate or touch any machinery within the Facility without the express authorization of Anchor for each specific requested action*.
>
> 6. The prohibitions set forth in Paragraph 5 are not applicable to the recordation of images of the Cincinnati Milling machine by camera, the creation of written descriptions, including drawings of the Cincinnati Milling machine, or the preparation of notes regarding the Cincinnati Milling machine.

---

[4]Defendant sometimes erroneously refers to Mr. Rennell as "Gerald Renauld."

4

Exhibit B,[5] ¶¶ 5-6 (emphasis added). In addition, defendant's counsel, Mary Barley-McBride, addressed a letter to Mr. Fitch dated July 18, 2005, advising that the machine retained the same settings from the day of the incident and asked "that you, your expert or Mr. Hina avoid adjusting any of the pre-set or calibrations on the equipment." Exhibit A, attached to *First Barley-McBride Aff*.

On July 20, 2005, Ms. Barley-McBride, Edward Hubbard, defendant's co-counsel, and three of defendant's employees were present on defendant's behalf at the inspection. *First Barley-McBride Aff*., ¶ 2; *Deposition of Mary Barley-McBride* ("*Barley-McBride Depo.*"), p. 5, Doc. No. 61. Mr. Fitch, Mr. Rennell and Mr. Hina were also present on behalf of the plaintiffs. *Barley-McBride Depo.*, p. 5; *First Barley-McBride Aff*., ¶ 2; *First Fitch Aff*. ¶ 4; *Affidavit of David Hina* ("*First Hina Aff*."), ¶ 2, attached as Exhibit 6 to *Memo. Contra*; *Affidavit of Gerald Rennell* ("*Rennell Aff*."), ¶ 2, attached as Exhibit 7 to *Memo. Contra*. Mr. Hubbard operated a video camera to record the inspection. *Barley-McBride Depo.*, pp. 5-6. Shortly after the inspection commenced, Mr. Hina and Mr. Rennell touched the machine, moving the speed dial and changing the speed setting. *Hina Aff*, ¶¶ 2-3; *Rennell Aff.*, ¶¶ 2-3; *First Barley-McBride Aff*., ¶ 7; *Affidavit of Mary Barley-McBride* ("*Second Barley-McBride Aff*."), ¶ 1, attached to *Defendant's Reply to Plaintiff's Memorandum Contra Defendant's Motion to Dismiss* ("*Reply*"), Doc. No. 40. A dispute arose between the parties. *First Fitch Aff*. ¶ 4. They contacted this Court and the inspection was adjourned. *Id.*; *First Barley-McBride Aff*., ¶ 9.

## II. MOTION TO DISMISS

---

[5]The provisions contained in Exhibits B, C and D are identical.

### A. Arguments of the parties

Following the inspection, defendant filed the *Motion to Dismiss*, arguing that the manipulation of the machine impaired defendant's ability to defend itself and that plaintiffs should be precluded from asserting a claim based on an alleged defect in the machine's speed mechanism. *Motion to Dismiss*, pp. 1-2.[6] Defendant also contends that the significance of the speed controller is "simply unknown to date[,]" conceding that the speed "may not be an issue" "if Plaintiffs' only claim of liability relates to a claimed lack of a mechanical guard, or other similar claim[.]" *Reply*, p. 5. Defendant therefore argues that, without plaintiffs' representation that their claims are not based on the machine's speed, Mr. Hina's and Mr. Rennell's breach of the Agreement prejudices defendant's ability to defend against plaintiffs' claims. *Motion to Dismiss*, pp. 7-8; *Reply*, pp. 5-7.

Plaintiffs raise several arguments in response. First, plaintiffs' counsel contends that he believed, based on Ms. Barley-McBride's representation, that the Agreement was "a standard confidentiality agreement." *First Fitch Aff*. ¶ 4. Mr. Fitch avers that he "had little time to deal with the late surfacing agreement" and blames the alleged breach on "ambiguous and poorly drafted" language: Mr. Fitch believed that the prohibitions in Paragraph 5 of

---

[6] In 2005, defendant initially contended that its ability to defend itself in the VSSR matter had also been impaired. *Motion to Dismiss*, p. 7. However, shortly after the *Motion to Dismiss* was filed, defendant filed a suggestion of bankruptcy and this case was administratively closed on August 11, 2005. *See* Doc. Nos. 18-20. After the case reopened over two years later, on November 5, 2007, Doc. No. 26, defendant conceded that its defense in the VSSR matter was not impaired, admitting that "some of the very valid concerns raised in 2005 [in the *Motion to Dismiss*] are apparently no longer valid." *Reply*, p. 3.

6

the Agreement[7] were inapplicable to the machine because of the language contained in Paragraph 6 of the Agreement.  *Id*.  He also avers that he "only became aware of Ms. Barley-McBride's letter [reiterating the prohibitions] when she raised it at the inspection on the following day, the 20th."  *Id*.  Mr. Fitch further avers that neither he nor his client nor his expert intended to violate the Agreement.  *Id*.

Second, plaintiffs contend that defendant is not prejudiced because (1) Ms. Archer video-taped the machine in operation in 2005; (2) speed was unimportant to the VSSR and OSHA claims and defendant did not raise the issue of speed at the VSSR hearing; (3) defendant's expert, James Vaughan, inspected the machine in December 2003 or January 2004 and did not make a note of the speed even though the claim may involve an intentional tort; (4) Mr. Vaughan has failed to produce the memory card from his camera despite a court order; (5) defendant's corporate representative, Shane McLoughlin, testified that he did not know the basis for the claim of prejudice; (6) defendant made changes to the machine before the inspection; (7) Mr. Rennell took two photos of the machine during the inspection that were "likely" taken before the speed controller had been manipulated and these photos show the speed of the machine at the time of the incident; (8) comparing Mr. Rennell's two photos to Ms. Archer's photos taken in 2005 shows that the smudges on the machine in all of the photos are the same, which means that the speed dial had not been touched when Mr. Rennell's two photos were taken; and (9) defendant lost its videotape of the inspection, which would have confirmed the timing of Mr. Rennell's photographs.  *Memo. Contra*, pp. 4-7; *Supp.*

---

[7] Paragraph 5 provides, in pertinent part, that the disclosee shall not "manipulate, operate or touch any machinery within the Facility without the express authorization of Anchor for each specific requested action."

*Memo. Contra*, pp. 1-3.[8] Plaintiffs argue that defendant did not file, or pursue, its *Motion to Dismiss* in good faith because defendant admits that it is unknown whether the speed controller is important. *Supp. Memo. Contra*, pp. 3-4. Plaintiffs also complain that defense counsel submitted contradictory affidavits and did not review her notes to determine whether she recorded the machine's speed prior to manipulation. *Id*.

In reply, defendant contends that Mr. Fitch, Mr. Hina and Mr. Rennell received adequate notice that they were not to touch the machine without prior authorization. *Reply*, p. 2. Defendant argues that Mr. Fitch's purported reading of the Agreement that nullifies the obligations in Paragraph 5 is strained. *Id*. at 2-3. Moreover, Mr. Fitch suggested some modifications to the Agreement, but he did not propose any changes to the prohibitions in Paragraph 5. *Id*. at 2; *Affidavit of Edward G. Hubbard* ("*Hubbard Aff*."), ¶¶ 2-3, attached to *Motion to Dismiss*. Citing to her deposition testimony, defendant also argues that Ms. Barley-McBride's affidavits are not inconsistent and that whether Mr. Hina and Mr. Rennell touched the speed dial "within a minute" upon reaching the machine or touched it "immediately," they nevertheless acted in breach of the Agreement. *Defendant's Supplemental Reply to Plaintiffs' Supplemental Memorandum Contra Defendant's Motion to Dismiss* ("*Supp. Reply*"), pp. 3-6.[9] Defendant contends that it would not have filed the *Motion to Dismiss* if it had notes regarding the settings of the speed dial. *Id*. at 6-7.

---

[8] These issues also serve as the basis for plaintiff's *Motion to Strike*, which will be addressed below.

[9] Defendant also admits that it lost the videotape of the inspection, but argues that that loss does not alter the fact that Mr. Hina and Mr. Rennell breached the Agreement.

Defendant also supports its claim of prejudice, arguing that (1) Fed. R. Civ. P. 30(b)(6) does not require Mr. McLoughlin, the corporate representative, to understand "legal doctrines of spoliation and prejudice" prior to his deposition; (2) Mr. Rennell does not specifically recall whether he took the photographs before manipulating the machine and there is no proper "smudge" evidence that Mr. Rennell's photos were taken first; (3) even if Mr. Rennell's photographs were taken prior to manipulation, they show only one of the speed parameters and it is unclear what that setting is as Mr. Rennell testified the speed was 33 and Mr. Hina believes the photos reflect a speed of 35; and (4) any changes made to the machine prior to the inspection did not affect the speed parameters. *Supp. Reply*, pp. 3, 7-8 (citing *Deposition of Gerald C. Rennell* ("*Rennell Depo.*"), p. 16, Doc. No. 63-4, and *Affidavit of David Hina* ("*Second Hina Aff.*"), attached as Exhibit 9 to *Supp. Memo. Contra*). Finally, defendant contends that plaintiffs' failure to respond to defendant's concession that the speed may be insignificant depending on plaintiffs' claims suggests that plaintiffs may intend to rely on a liability theory involving the speed of the machine. *Id*. at 9-10.

**B.  Discussion**

It is well settled that federal trial courts have inherent power to manage their own dockets, *Am. Life Ins. Co. v. Stewart*, 300 U.S. 203, 215 (1937), and to sanction bad faith conduct, even if the court has not expressly considered whether such conduct could be sanctioned under all potentially applicable rules or statutes. *First Bank of Marietta v. Hartford Underwriters Ins. Co.*, 307 F.3d 501, 511 (6th Cir. 2002).

Here, the Court must determine whether or not Mr. Hina's and Mr.

Rennell's intentional manipulation of the machine's speed dial prejudices defendant's defense of this case. Defendant concedes that the speed setting is immaterial *if* plaintiffs do not intend to rely on speed as a part of a theory of liability. However, this case was stayed prior to the parties' expert disclosures, Doc. Nos. 10, 19, 26, and, to date, plaintiffs have not articulated a theory of liability.

In addition, the Court observes that the parties' experts apparently disagree on whether or not the machine's speed is relevant to plaintiffs' intentional tort claim. Defendant's expert, Mr. Vaughan, testified that the machine's speed was not important to the VSSR and OSHA claims, but that speed would be important in the context of an intentional tort. *Deposition of James E. Vaughan* ("*Vaughan Depo.*"), pp. 21-25, Doc. No. 39. Conversely, Mr. Rennell averred that knowing the exact speed at the time of the incident is not important and that "one does not need to know the exact speed of the machine to understand the nature of Mr. Hina's injuries in the accident, as apparently suggested by the defense expert." *Rennell Aff.*, ¶ 3.

Accordingly, after considering the arguments and evidence submitted by the parties, discussed *supra*, the Court concludes that there is insufficient evidence at this time to determine whether or not Mr. Hina's and Mr. Rennell's breach of the Agreement,[10] *i.e.,* their

---

[10] Mr. Fitch argues at length that he did not have sufficient time to read the Agreement, that defense counsel represented to him that the Agreement was a "standard" confidentiality agreement, that the language in the Agreement was "ambiguous" and "poorly drafted" and that there was no intent to violate the Agreement. *See infra*. Regardless of these arguments, it is undisputed that Mr. Fitch received the Agreement prior to the inspection; that he reviewed and made changes to the Agreement; that those changes did not include modification of the prohibitions in Paragraph 5 requiring prior approval before touching the machine; that Mr. Fitch, Mr. Hina and Mr. Rennell each signed the Agreement; and that Mr. Hina and Mr. Rennell manipulated the speed control without permission. Plaintiffs cite to no authority to support their apparent contention that their subjective intent is relevant to the issue of whether or not they violated the Agreement.

unauthorized manipulation of the machine's speed dial, impairs defendant's ability to defend itself in this case.  It may be that the exact speed of the machine will be important in this matter once plaintiffs reveal their theory of liability, but the significance of the machine's speed cannot be determined at this time.  The Court therefore concludes that establishing the following case deadlines would assist the progress of this case:

Disclosures relating to primary experts must be made by December 12, 2008.  Responsive disclosures must be made by January 12, 2009.  If the expert is specially retained, the disclosures must conform to Fed. R. Civ. P. 26(a)(2), unless otherwise agreed to by the parties or ordered by the Court.  If the expert is not specially retained, the party must provide (1) the identity of the expert, (2) an articulation of the substance of the testimony expected to be provided by the expert and (3) the bases of any opinion expected to be offered by the expert.

All discovery must be completed by March 16, 2009, except that damages-related discovery, including expert discovery, may be deferred on the condition that all such discovery is completed prior to the final pretrial conference.

Motions for summary judgment may be filed no later than April 30, 2009.

This case will be referred to the March 2009 Settlement Week.

**WHEREFORE**, the *Motion of Defendant Anchor Glass Container Corporation to Dismiss, or in the Alternative, Motion in Limine*, Doc. No. 16, is **DENIED** without prejudice to renewal.[11]

---

[11]Having concluded that it is impossible at this time to determine the relevance of the manipulation of the speed dial to the defense of this case, the Court need not, and does not, express any opinion as to whether or not the

11

**III. MOTION TO STRIKE**

    **A.    Arguments of the parties**

Plaintiffs move to strike the *Motion to Dismiss* because of defendant's alleged improper conduct, including (1) defendant's alleged violation of a court order to produce Mr. Vaughan's memory card from his camera; (2) defendant's failure to produce the videotape of the inspection; and (3) defendant's failure to provide a factual basis for its claim of prejudice in the *Motion to Dismiss*. *Motion to Strike*, p. 1 (incorporating the arguments from its *Supp. Memo. Contra*).

In response, defendant argues that the *Motion to Strike* is improper under Fed. R. Civ. P. 12(f) because plaintiffs did not timely file the motion. *Defendant's Memorandum in Opposition to Plaintiffs' Motion to Strike* ("*Memo. in Opp.*"), p. 1, Doc. No. 64. Defendant contends that plaintiffs should have filed the *Motion to Strike* when the *Motion to Dismiss* was filed rather than filing it contemporaneously with the *Supp. Memo. Contra*. *Id*. at 2. Defendant argues that plaintiffs cannot now move to strike the *Motion to Dismiss* when plaintiffs' violation of the Agreement precipitated the *Motion to Dismiss*. *Id*. (incorporating by reference its arguments in the *Supp. Reply*).

    **B.    Standard**

Rule 12(f) of the Federal Rules of Civil Procedure provides that a court, "on its own" or "upon motion made by a party . . . before

---

speed of the machine at the time of the incident may be determined from the photographs, videos, affidavits and testimony submitted to the Court. However, the Court does advise that, in the event that the parties argue this issue in the future, the parties should better explain how the speed dial works, whether there is more than one speed dial or speed parameter and, if so, what dial or parameter appears in the photographs, and how to read each dial and/or parameter.

responding to the pleading," "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Such motions are generally viewed with disfavor and are rarely granted. *AT&T Global Information Solutions Co. v. Union Tank Car Co.*, No. C2-94-876, 1997 U.S. Dist. LEXIS 6090, *6-7 (S.D. Ohio Mar. 31, 1997) (Holschuh, J.) (citing *Brown and Williamson Tobacco Corp. v. United States*, 201 F.2d 819, 822 (6th Cir. 1953)); *Morrow v. South*, 540 F. Supp. 1104, 1111 (S.D. Ohio 1982) (Rice, J.).

### C. Discussion

Plaintiffs have failed to articulate any basis under Fed. R. Civ. P. R. 12(f) to strike the *Motion to Dismiss*. Instead, plaintiffs list a litany of purported discovery violations as a basis for striking the *Motion to Dismiss*. Moreover, as discussed *supra*, there is expert testimony that the speed of the machine may be relevant in the context of an intentional tort. In addition, the Court agrees that plaintiffs failed to file the *Motion to Strike* prior to responding to the *Motion to Strike*, as required by Fed. R. Civ. P. 12(f). *See AT&T Global Information Solutions Co.*, 1997 U.S. Dist. LEXIS 6090, *6-7. Plaintiffs have therefore failed to explain why this case presents those rare circumstances that would justify the Court in striking the *Motion to Dismiss*. Accordingly, *Plaintiffs' Motion to Strike Defendant's Motion to Dismiss or Other Sanctions*, Doc. No. 58, is **DENIED**.

Turning to the discovery disputes raised in the *Motion for Sanctions*, the Court concludes that it is unclear whether the dispute

about the production of Mr. Vaughan's memory card remains viable.[12] To the extent that this issue remains unresolved, the Court expects counsel to cooperate and to contact the Court should the parties reach impasse on the matter. Finally, plaintiffs make passing reference to a spoliation claim because defendant lost the videotape of the inspection. However, plaintiffs have not filed a motion seeking to assert such a claim. Accordingly, there is nothing for the Court to consider at this time.

>                                    *s/Algenon L. Marbley*
>                                    ALGENON L. MARBLEY
>                                  United States District Judge

---

[12] In response to the allegation that Mr. Vaughan failed to timely provide the memory card to his camera, defendant contends that it notified plaintiffs' counsel that Mr. Vaughan was hospitalized with meningitis and that his wife was unable to locate the memory card. *Supp. Reply*, pp. 1-2. Defendant represents that plaintiff's counsel failed to communicate with defense counsel about Mr. Vaughan's condition or the memory card. *Id*. at 2.